UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**BERNICE HICKS,**

        **Plaintiff,**

v.                                        **Civil Action No.**   __3:17cv780__

**FAY SERVICING, LLC,**

        **Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

    1.    This Complaint is filed and these proceedings instituted against Fay Servicing, LLC ("Fay"), under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et. seq* to recover actual, statutory, and punitive damages, court costs, and attorneys' fees by reason of Fay's violations of its duties to respond to borrower's inquiries regarding loan servicing problems, as provided at 12 U.S.C. § 2605(e).  Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure in order to prevent irreparable harm.

    2.    Fay has misapplied Plaintiff's mortgage payment for every month that Fay has serviced her mortgage.  Fay compounded its mistakes by failing to properly apply Plaintiff's payment, by refusing to remove late charges and penalties, and by calling Plaintiff in attempts to pressure her into paying an amount that she does not owe.  Through its loan servicing errors and poor recordkeeping, Fay put Plaintiff's mortgage loan into a delinquency status, despite the fact that

Plaintiff paid faithfully on her loan every month that Fay has been the servicer. Fay ignored Plaintiff's repeated attempts to explain and document to Fay that it had no basis to put Plaintiff's loan into a delinquency status. Fay failed to respond properly to Plaintiff's "Qualified Written Request" and "Notice of Error." Fay failed to take proper corrective action with respect to the servicing of Plaintiff's home loan. This action also is predicated upon Fay's negligence.

3. This Complaint is also filed and these proceedings instituted against Fay under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* to recover actual, statutory, and punitive damages, court costs, and attorneys' fees by reason of Fay's false representations of the amount or legal status of Ms. Hicks's debt in violation of 15 U.S.C. § 1592e(3)(a), and Fay's use of unfair or unconscionable means to collect or attempt to collect amounts not expressly authorized by the borrower's mortgage agreement or permitted by law in violation of 15 U.S.C. § 1592f(1). Fay committed these violations of the Fair Debt Collection Practices Act by the same actions that are described in Paragraph 1, above, and incorporated here by this reference.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 12 U.S.C. § 2614 and 28 U.S.C. § 1331, and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

## PARTIES

5. Plaintiff Bernice Hicks ("Ms. Hicks") is a natural person who resides at 1709 Blair Street, Richmond, Virginia 23220. Ms. Hicks is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

6. Defendant Fay Servicing, LLC is a foreign limited liability company doing business in the Commonwealth of Virginia. Fay services numerous loans which are "federally related mortgage loans" as defined in 12 U.S.C. § 2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" which make or invest in residential real estate loans aggregating more than $1,000,000 per year. Ms. Hicks's home loan is one such loan.

7. Defendant Fay Servicing, LLC regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(6). Fay uses one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests. No exception to the term "debt collector" applies to exempt Fay from regulation under the FDCPA.

8. According to its website, Fay specializes in, among other things, servicing of past due mortgages, employing "Customized Solutions" which it describes as follows:

> Our goal is to better inform our customers of, and provide each with, options that may be available if the customer is having difficulty making his or her mortgage payment. In order to find the optimal solution to help our customers get back on track and keep their homes, we promise to devote the time necessary to fully understand each individual's specific situation. Here at Fay Servicing, we understand that our customers are not just loan numbers – they're homeowners.

https://www.fayservicing.com/about-us/, last visited November 21, 2017.

## **FACTS**

9. In March 2007, Ms. Hicks closed on a residential real estate loan to buy her home at 1709 Blair Street in the City of Richmond.

10. The original lender was Metamerica Mortgage Bankers, Inc.

11. Thereafter, the loan and the servicing of the loan were taken over by CitiMortgage, Inc. ("Citi").

12. Ms. Hicks filed a chapter 13 bankruptcy on November 12, 2010 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Virginia, and the Court assigned her Case No. 10-37883-KRH.

13. On November 18, 2010, Ms. Hicks filed her chapter 13 plan (the "Chapter 13 Plan"). A copy of the Chapter 13 Plan is attached as Exhibit 1.

14. At paragraph 5.A., the Chapter 13 Plan included the following provision:

5. **Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Primary Residence; Other Long Term Payment Obligations, whether secured or unsecured, to be continued upon existing contract terms; Curing of any existing default under 11 U.S.C. § 1322(b)(5).**

   A. **Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.** The creditors listed below will be paid by the debtor(s) pursuant to the contract without modification, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below, without interest unless an interest rate is designated below for interest to be paid on the arrearage claim and such interest is provided for in the loan agreement.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Arrearage Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| CitiMortgage, Inc. | Primary Residence: Location: 1709 Blair St., Richmond VA 23220 | 800.23 | 950.00 | 0% | 60 months | 15.83 |

15. The Chapter 13 Plan provided for an estimated arrearage amount of $950.00 to be cured through Chapter 13 Plan payments.

16. The Chapter 13 Plan provided that Ms. Hicks would pay all post-petition mortgage payments (i.e., all payments coming due after Ms. Hicks's bankruptcy petition date) directly to the mortgage servicer.

17. The first post-petition mortgage payment came due on December 1, 2010.

18. On December 9, 2010, Citi filed a proof of claim (the "Mortgage Proof of Claim") in the Bankruptcy Case. A copy of the Mortgage Proof of Claim is attached as Exhibit 2.

19. The Mortgage Proof of Claim stated that, as of November 12, 2010, Ms. Hicks owed $0.00 in arrears.

20. On January 27, 2011, the Bankruptcy Court entered an order confirming Ms. Hicks's Chapter 13 Plan. A copy of the January 27, 2011 Order Confirming Plan is attached as Exhibit 3.

21. On October 7, 2015, Citi filed a notice of the transfer of the Mortgage Proof of Claim in the Bankruptcy Case (the "Notice of Transfer"). A copy of the Notice of Transfer is attached as Exhibit 4.

22. The Notice of Transfer provided for notices and payments to be sent to Fay.

23. On February 10, 2016, the chapter 13 trustee appointed to Ms. Hicks's Bankruptcy Case, Carl M. Bates, Esq. ("Mr. Bates") filed a Report by Trustee of Completion of Plan Payments ("Trustee's Report"), certifying that Ms. Hicks had completed all payments required by her Chapter 13 plan. A copy of the Trustee's Report is attached as Exhibit 5.

24. On March 25, 2016, the Bankruptcy Court issued an Order of Discharge of Debtor, granting Ms. Hicks a discharge under 11 U.S.C. § 1328(a) ("Discharge Order"). A copy of the Discharge Order is attached as Exhibit 6.

25. On April 14, 2016, after granting the discharge, the Bankruptcy Court closed the Bankruptcy Case.

26. After Ms. Hicks's Bankruptcy Case was closed, Fay began calling her and asserting that she was behind on her mortgage, and that she owed for a payment that came due prior to Ms.

Hicks filing the petition that initiated her Bankruptcy Case.

27.  Ms. Hicks has disputed orally and by written correspondence to Fay that she was behind on her mortgage for any amount.

28.  On December 2, 2016, Ms. Hicks mailed by certified mail, return receipt requested, a letter to Fay (the "Request for Information") disputing that she was behind in her payments and requesting that Fay provide her with information concerning (a) her principal, interest, and escrow payments for each month from November 2010 through the date of the letter, (b) her total unpaid principal, interest, and escrow balances are of November 12, 2010, (c) an explanation—for each payment received on or after November 12, 2010—of the amount of the payment, the date received, the date posted, and how each payment was credited to her account, (d) a list of all fees, costs, charges, and expenses added to her account from November 12, 2010 through the date of the letter, and (e) an explanation—for any fees, costs, charges, and expenses added to her account from November 12, 2010 through the date of the letter—of the amount, purpose, payment date, and recipient. A copy of the Request for Information is attached as Exhibit 7.

29.  Fay received the Request for Information on December 5, 2016.

30.  On or about December 12, 2016, Fay wrote to Ms. Hicks in response to her Request for Information (the "Response to Request for Information"), including with the Response to Request for Information a ledger entitled "Fay Servicing, LLC Post Petition Payment Ledger" (the "Post Petition Payment Ledger"). The Response to Request for Information and Post Petition Payment Ledger are attached as Exhibit 8.

31.  In its Response to Request for Information, Fay stated the following:

> a $227.00 total fee balance has accumulated since your bankruptcy case was terminated on April 14, 2016. Specifically, seven separate late fee charges and one non-sufficient funds fee have been assessed to your account. Please be advised that per your Note, if we have not received the full amount of the monthly payment by the end of 15 calendar days after the date that it is due, a late fee will be charged to your account. The enclosed transaction history shows that payments due in May, June, July, August, September, October, and November 2016 were all received after the 16th of the month, and therefore, a $31.00 late fee was assessed in those months. Further, a $10.00 non-sufficient funds fee was charged to your account on June 09, 2016 because the payment originally applied toward the June 01, 2016 payment was reversed and returned to your bank account on June 09, 2016 as you revoked the draft.

32. The Post Petition Payment Ledger shows Ms. Hicks's payments on her mortgage account and how those payments were applied from the date her first post-bankruptcy payment was received on December 2, 2010 through November 30, 2016. For each month shown, beginning with her first post-bankruptcy payment—which came due on December 1, 2010 and was received by Citi on December 2, 2010—the Post Petition Payment Ledger shows Ms. Hicks's payment was applied incorrectly to the previous month's due date. For instance, the Post Petition Payment Ledger shows a payment of $800.23 was received on "12/02/10" and that that payment was applied to the "Pmt Due" date of "11/01/2010." For each month until the last date shown, Ms. Hicks's payment was applied to the previous month.

33. Ms. Hicks discovered the error after her Bankruptcy Case closed, when Fay began calling her and asserting that she was one month behind in her mortgage payments.

34. On August 11, 2017, Ms. Hicks mailed by certified mail, return receipt requested, a letter to Fay (the "Notice of Error") notifying Fay that it was asserting—and that she was disputing—that she owed a monthly payment that came due before she filed her Bankruptcy Case as well as related late charges. The Notice of Error notified Fay that it began misapplying her payments in the first month after she filed the Bankruptcy Case and disputed the validity of a "non-sufficient funds" fee that Fay levied after it improperly attempted to draft Ms. Hicks's bank account

twice in the same month. The Notice of Error then requested that Fay correct the mortgage loan account. A copy of the Notice of Error is attached as Exhibit 9.

35. Fay received the Notice of Error on August 14, 2017.

36. On or about September 14, 2017, Fay wrote to Ms. Hicks in response to her Notice of Error (the "Response to Notice of Error"). Fay's Response to Notice of Error completely failed to acknowledge Ms. Hicks's dispute with Fay's accounting of her payments or to respond to Ms. Hicks's assertion that it had misapplied her post-bankruptcy payments by crediting each payment to the wrong month, and Fay has refused to make corrections to Ms. Hicks's account. Further, Fay's Response to Notice of Error not only blamed Ms. Hicks for the "non-sufficient funds" charge in June 2016 by saying Ms. Hicks authorized the payment draft, but Fay also informed Ms. Hicks that a second non-sufficient funds fee of $10.00 was assessed in January 2017. A copy of the Response to Notice of Error is attached as Exhibit 10.

37. Regarding Ms. Hicks's dispute with respect to the late charges Fay had assessed, Fay's Response to Ms. Hicks's Notice of Error stated the following:

> As of the date of this letter, the account is due for September 1, 2017, in the regular monthly payment amount of $776.12, the principal balance is $110,726.95, and the escrow balance is $470.77. Additionally, a total fee balance of $485.00 has accumulated which includes 15 late fees of $31.00 each and two non-sufficient funds fees of $10.00. Per your Note, you must make your monthly mortgage payment by the end of 15 calendar days after the date it is due. In light of the information provided above, Fay has determined no errors occurred in the servicing of your mortgage account.

38. Ms. Hicks's written correspondence to Fay was in each instance a "Qualified Written Request," as that term is defined under RESPA's loan servicing dispute resolution provisions governing the duty of a loan servicer to respond to borrower inquiries.

39. Instead of correcting their accounting errors, Fay's Response to Request for

Information contained a false or misleading statement regarding the amount and legal status of Ms. Hicks's debt: "payments due in May, June, July, August, September, October, and November 2016 were all received after the 16th of the month, and therefore, a $31 late fee was assessed in those months."

40. Again, instead of correcting their accounting error, Fay's Response to Notice of Error contained more false or misleading statements regarding the amount and legal status of Ms. Hicks's debt by stating the June 2016 "non-sufficient funds charge" was proper, by stating that—as of the date of the letter—"the account is due for September 1, 2017", "the principal balance is $110,726.96", "the escrow balance is $470.77", and "a total fee balance of $485.00 has accumulated which includes 15 late fees of $31.00 each and two non-sufficient funds fees of $10.00."

41. Due to Fay's misapplication of payments, if Fay's accounting is not corrected, Fay will charge Ms. Hicks a $31.00 late fee for the remaining 236 payments on her mortgage debt, beginning September 2017 and ending April 2037.

42. This would amount to $7,316.00 in improper late fees.

43. Fay acted willfully, with reckless disregard for Ms. Hicks's rights and interests, and/or with gross negligence, such as to warrant an award of punitive damages.

44. Fay has demonstrated a pattern and practice of noncompliance with RESPA's loan servicing dispute resolution provisions and procedures.

45. Fay knew or should have known the amounts it was seeking to collect were unenforceable under the terms of the mortgage loan and not permitted by law, because Fay knew the Mortgage Proof of Claim stated a claim for $0.00 arrears, and Ms. Hicks notified Faye of the

misapplication orally and in writing.

46. As a result of Fay's acts and omissions, Ms. Hicks has endured and suffered, and continues to endure and suffer, actual damages and injury, including but not limited to, costs and expenses, severe stress, lost time, mental anguish and suffering, emotional distress, embarrassment, humiliation, and damage to her credit standing and reputation.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF RESPA, 12 U.S.C. § 2605(e)**

47. Fay did not make appropriate corrections in Ms. Hicks's account, including the crediting of any late charges or penalties, and transmit to Ms. Hicks a written notification of such correction, within 30 days after receiving Ms. Hicks's Qualified Written Requests, as required under 12 U.S.C. §§ 2605(e)(2)(A) and 2605(k)(1)(C).

48. Fay failed to conduct an appropriate investigation after receiving Ms. Hicks's Qualified Written Request letters, as generally required under 12 U.S.C. § 2605(e)(2).

49. Plaintiff is aware of ten (10) other complaints, by borrowers residing nine different states, which demonstrate that Fay's actions reflect a pattern and practice of conduct which is either required or not specifically prohibited by its policies and procedures, to ignore the provisions of the Bankruptcy Code and its obligations to comply with 12 U.S.C. § 2605.

50. Ms. Hicks is therefore entitled to actual and statutory damages against Fay, as well as her reasonable attorneys' fees and costs, pursuant to 12 U.S.C. § 2605(f)(1) and (3).

**SECOND CAUSE OF ACTION**
**CONVERSION**

51. Fay's acts and omissions in incorrectly applying Ms. Hicks's home loan payments

constitute the tort of conversion.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

52. Fay negligently serviced the subject loan, in breach of its duty to Ms. Hicks to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records in a nonnegligent manner.

53. Fay's conduct was grossly negligent.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

54. In the Response to Request for Information, Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) by making a false representation of the character, amount, or legal status of Ms. Hicks's mortgage debt. More specifically, when Fay told Ms. Hicks that "payments due in May, June, July, August, September, October, and November 2016 were all received after the 16th of the month, and therefore, a $31 late fee was assessed in those months," that statement was false or misleading.

55. In the Response to Notice of Error, Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) by making false representations of the character, amount, or legal status of Ms. Hicks's mortgage debt. More specifically, when Fay told Ms. Hicks the June 2016 "non-sufficient funds charge" was proper, and when Fay told Ms. Hicks that—as of the date of the letter—"the account is due for September 1, 2017," "the principal balance is $110,726.96," "the escrow balance is $470.77," and "a total fee balance of $485.00 has accumulated which includes 15 late fees of $31.00 each and two non-sufficient funds fees of $10.00," those statements were all

false or misleading.

56. Ms. Hicks is therefore entitled to actual and statutory damages against Fay, as well as her reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f

57. Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect or attempt to collect amounts not expressly authorized by the borrower's mortgage agreement or permitted by law in violation.  More specifically, when Fay charged Ms. Hicks a late charge of $31.00 for May, June, July, August, September, October, and November 2016, and presumably every month after that date, Fay was penalizing Ms. Hicks and attempting to coerce Ms. Hicks into making a monthly payment to which Fay was not entitled.

58. The mortgage agreement does not allow for the imposition of late charges against Ms. Hicks when she makes her payments on time.  Because she has made all required payments since she filed bankruptcy, the late charges Fay is charging to Ms. Hicks are not authorized by the mortgage agreement.

59. No law permits Fay to impose late charges against Ms. Hicks when she makes her payments on time, as she has done since she filed bankruptcy.

60. Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect or attempt to collect amounts not expressly authorized by the borrower's mortgage agreement or permitted by law in violation.  More specifically, when Fay charged Ms. Hicks a non-sufficient funds charge of $10.00 in June 2016 after it improperly debited her bank account twice during the same month, Fay was penalizing Ms. Hicks and

attempting to coerce Ms. Hicks into making a monthly payment to which Fay was not entitled.

61. The mortgage agreement does not allow Fay to require Ms. Hicks to pay two monthly amounts during the same month when she is already current on her payment obligations. Because Fay charged the $10.00 non-sufficient funds charge after it attempted to require Ms. Hicks to pay two monthly amounts during the same month when she is already current on her payment obligations, the late charges Fay is charging to Ms. Hicks are not authorized by the mortgage agreement.

62. No law permits Fay to require Ms. Hicks to pay two monthly amounts during the same month when she is already current on her payment obligations and then impose a charge against her when she subsequently instructs her bank not to honor the improper second draft.

63. Plaintiff is aware of nine other complaints, by consumers residing in six different states, which demonstrate that Fay's actions reflect a pattern and practice of conduct which is either required or not specifically prohibited by its policies and procedures, to ignore the provisions of the Bankruptcy Code and fair debt collection laws applicable to it, and to illegally collect or attempt to collect debts from consumers. Accordingly, Fay's actions constitute unfair and unconscionable means to collect debts in violation of 15 U.S.C. § 1692f generally and § 1692(f)(1) specifically.

64. Ms. Hicks is therefore entitled to actual and statutory damages against Fay, as well as her reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**WHEREFORE**, Plaintiff Bernice Hicks respectfully prays that this Court:

(1) Declare that the subject loan is not in default or delinquent by reason of any conduct of the Plaintiff, and that the subject loan be reinstated by Fay for an amount that in no way penalizes

the Plaintiff for Fay's acts and omissions;

(2) Award the Plaintiff actual and punitive damages for Fay's violations of the Real Estate Settlement Procedures Act;

(3) Award the Plaintiff additional damages for Fay's pattern and practice of noncompliance with the Real Estate Settlement Procedures Act, in the amount of $2,000.00;

(4) Award Plaintiff actual damages for Fay's negligence;

(5) Award Plaintiff actual and punitive damages for Fay's conversion and for its gross negligence;

(6) Award Plaintiff reasonable attorneys' fees and costs under the Real Estate Settlement Procedures Act;

(7) Award Plaintiff statutory damages of $1,000.00 and award actual damages against Defendant for its violations of the Fair Debt Collection Practices Act;

(8) Award Plaintiff reasonable attorneys' fees and costs against Defendant for its violations of the Fair Debt Collection Practices Act; and

(9) Award Plaintiff such other and further relief that the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

                                                    Respectfully submitted,
                                                    Bernice Hicks
                                                    By Counsel

  /s/_____
Dale W. Pittman (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone (804) 861-6000
Facsimile (804) 861-3368
dale@pittmanlawoffice.com

Emily Connor Kennedy (VSB #83889)
Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
2104 W. Laburnum Ave., Suite 201
Richmond, VA 23227
Telephone (804) 358-9900
eckennedy@bolemanlaw.com
mcleffler@bolemanlaw.com

Counsel for Plaintiff